ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| IN-FORMATION STUDIO, LLC<br><br>Recurrente<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE LARES, JUNTA DE SUBASTA<br><br>Recurrido | KLRA202400324 | *Revisión* procedente de la Junta de Subastas del Municipio Autónomo de Lares<br><br>Subasta Núm. 2024-09<br><br>Sobre: Revisión de Notificación de Adjudicación de la Subasta |

Panel integrado por su presidente el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de diciembre de 2024.

I.

El 20 de junio de 2024, In-Formation Studio, LLC (IFS), instó ante nos *Solicitud de Revisión Judicial.* Impugna la adjudicación de una Subasta efectuada por el Municipio Autónomo de Lares (Municipio),[1] para brindar servicios de Arquitectura e Ingeniería bajo el Programa de Rehabilitación de la Ciudad de Subvención en bloque para el Desarrollo Comunitario y Recuperación ante desastres (CDBG-DR).

En su recurso, IFS relata que, tras publicar el *Requerimiento de Propuestas -Request for Proposals o RFP-*, para el Proyecto Teatro Suau & Fiol,[2] el Municipio fijó como la fecha límite para someter propuestas el 8 de marzo de 2024. A esos fines, el Municipio compartió con los licitadores participantes un documento específico para la Subasta 2024-09 que compila las *Instrucciones a los Licitadores y el Proceso de Subasta* a seguir bajo el Programa CDBG-

---

[1] Notificación de Adjudicación fue emitida el 10 de junio de 2024.
[2] PR-CRP-000777, Subasta Núm. 2024-09.

Número Identificador

SEN2024_____

DR.[3] En esa ocasión, el Municipio anticipó que emitiría el *Anuncio de Adjudicación* el 21 de marzo de 2024.

Posteriormente, IFS recibió vía correo electrónico un comunicado del Municipio notificando que la nueva fecha límite para someter propuestas sería el 26 de marzo de 2024. El comunicado no fijó una nueva fecha para la adjudicación de la subasta. El 26 de marzo de 2024, IFS sometió su propuesta.

IFS alega, que luego de la apertura de subasta no recibió documentación de ningún tipo por lo que, el 6 de mayo se comunicó vía teléfono a la Oficina de Secretaría Municipal a los fines de solicitar información sobre la adjudicación de la subasta. El Municipio le informó que el Secretario Municipal y Presidente de la Junta de Subasta estaba de vacaciones. Según IFS, el Municipio acordó devolver la llamada, pero no lo hizo.

El 7 de mayo IFS se comunicó nuevamente vía teléfono con el Municipio. En esta ocasión, el Municipio le indicó que no podían divulgar información sobre la adjudicación de subasta, debido a que en tres semanas se publicaría la notificación formal. IFS advino en conocimiento mediante tercero de que el Municipio envió documentación oficial a algunos licitadores referente a la subasta, justificando el atraso en adjudicarla.

El 31 de mayo de 2024, al no recibir notificación alguna respecto a la subasta, IFS se comunicó con el Municipio vía correo electrónico, anejando documentación de que, en efecto, había presentado propuesta y compartiendo su intranquilidad de "no ser parte de los comunicados oficiales del Municipio respecto a la subasta". Tras lograr comunicarse telefónicamente con el Presidente de la Junta de Subasta -señor Carlos Pérez-, este le confirmó haber

---

[3] El Proceso de Subasta establece los parámetros a seguir para la evaluación de las propuestas sometidas, así como una estructura de puntuaciones divididas principalmente en las siguientes categorías: Cualificaciones (50 puntos), Enfoque de Trabajo (50 puntos) y Propuesta de Costo (35 puntos), para un total de 135 puntos por propuesta.

recibido su propuesta y le dejó saber, que hubiese preferido que llamara antes de enviar un correo electrónico al respecto. IFS no recibió documentación retroactiva referente al proceso de subasta. El 6 de junio de 2024, IFS volvió a enviar correo electrónico al Municipio sin obtener respuesta.

Finalmente, tras recibir de parte del Municipio la *Notificación de Adjudicación* y por no estar conforme con la misma, IFS acudió ante nos. Plantea:

1. PRIMER ERROR: ERRÓ LA JUNTA DE SUBASTA DEL MUNICIPIO AUTÓNOMO DE LARES al no proveer ningún documento complementario que justificara la asignación de las puntuaciones. La omisión de dicho documento refleja una actuación arbitraria y caprichosa. El Municipio está en incumplimiento con el propósito de hacer del proceso de subasta y adquisición uno público y transparente.

2. SEGUNDO ERROR: ERRÓ LA JUNTA DE SUBASTA DEL MUNICIPIO AUTÓNOMO DE LARES al no seguir la metodología de evaluación descrita en el Proceso de Subasta, incumpliendo con el proceso establecido para la correcta selección de la compañía agraciada.

3. TERCER ERROR: ERRÓ LA JUNTA DE SUBASTA DEL MUNICIPIO AUTÓNOMO DE LARES al adjudicar la subasta a Design & Field, LLC sin proveer documentos complementarios que justificara que dicha compañía cumple con las calificaciones necesarias para adjudicársele dicho proyecto.

4. CUARTO ERROR: ERRÓ LA JUNTA DE SUBASTA DEL MUNICIPIO AUTÓNOMO DE LARES al excluir a In-Formation Studio, LLC en las comunicaciones procesales referentes a la subasta en curso.

El 27 de junio de 2024 le concedimos treinta (30) días al Municipio para que compareciera a fijar su posición. Así lo hizo el 29 de julio de 2024. Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

II.

A.

El Código Municipal de Puerto Rico, Ley Núm. 107-2020, según enmendada, establece que todo municipio constituirá y tendrá una junta de subastas. En cuanto a la Solicitud de

Propuestas y/o Solicitud de Propuestas Selladas, conocida en inglés como *Request for Proposal* (*RFP*), "este método de licitación será utilizado para adquirir bienes, obras y servicios no profesionales que admite la negociación entre el oferente y el municipio, mientras se evalúan las propuestas recibidas".[4] En lo pertinente, el Art. 2.040(a) de aludida ley dispone:

> La Junta entenderá y adjudicará todas las subastas que se requieran por ley, ordenanza o reglamento y en los contratos de arrendamiento de cualquier propiedad mueble o inmueble y de servicios, tales como servicios de vigilancia, mantenimiento de equipo de refrigeración y otros.
>
> a. *Criterios de adjudicación* — **Cuando se trate de compras, construcción o suministros de servicios, la Junta adjudicará a favor del postor razonable más bajo.** En el caso de ventas o arrendamiento de bienes muebles e inmuebles adjudicará a favor del postor más alto. La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta.
>
> **La Junta podrá adjudicar a un postor que no sea necesariamente el más bajo o el más alto, según sea el caso, si con ello se beneficia el interés público. En este caso, la Junta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación**.
>
> La adjudicación de una subasta será notificada a todos los licitadores certificando el envío de dicha adjudicación mediante correo certificado con acuse de recibo, o mediante correo electrónico, si así fue provisto por el licitador o licitadores. En la consideración de las ofertas de los licitadores, la Junta podrá hacer adjudicaciones por renglones cuando el interés público así se beneficie. La Junta de Subasta notificará a los licitadores no agraciados las razones por las cuales no se le adjudicó la subasta. Toda adjudicación tendrá que ser notificada a cada uno de los licitadores, apercibiéndolos del término jurisdiccional de diez (10) días para solicitar revisión judicial de la adjudicación

---

[4] 21 LPRA § 7211 "El *RFP* permite la compra negociada y confiere a los licitadores la oportunidad de revisar y modificar sus ofertas antes de la adjudicación de la buena pro; el municipio podrá solicitar de los licitadores la presentación de su mejor y final oferta. El RFP debe contener los parámetros que se utilizarán para la adjudicación del contrato. Es decir, los requerimientos, los términos y las condiciones, así como los factores que han de considerarse en la evaluación para la adjudicación de la subasta. La fase de negociación no creará un derecho adquirido entre las partes. Las licitaciones, mediante Solicitud de Propuestas Selladas, serán requeridas cuando el costo de los bienes, obras y servicios no profesionales exceda la cuantía de cien mil (100,000) dólares y la adjudicación es realizada por la Junta de Subastas. La invitación será emitida por la Junta de Subastas".

ante el Tribunal de Apelaciones, de conformidad con el Artículo 1.050 de este Código.[5]

Conforme a la sección 13 de la parte II del Reglamento Núm. 8873 de 19 de diciembre de 2016, el aviso de adjudicación de subastas debe contener:

> (3) La notificación de adjudicación o la determinación final de la Junta, que se enviará a todos los licitadores que participaron en la subasta, debe contener la siguiente información:
>     a) nombre de los licitadores;
>     b) **síntesis de las propuestas sometidas**;
>     c) factores o criterios que se tomaron en cuenta para adjudicar la subasta y **razones para no adjudicar a los licitadores perdidosos**;
>     d) derecho a solicitar revisión judicial de la adjudicación o acuerdo final, ante el Tribunal de Apelaciones, y el término para ello, que es dentro del término para impugnar la subasta ante el Tribunal de Apelaciones.

A su vez, la sección 10.4 sobre *Selection and Award* del *RFP* dispone, claramente que:

> Los *Qualified Proposer[s]* recomendados serán aquellos con la Propuesta, conforme a este RFP, **que obtenga el puntaje total más alto de la propuesta**. Una vez finalizada la evaluación, la Junta de Subastas del Municipio emitirá resolución de adjudicación o cancelación. La resolución de adjudicación de la Junta de Subastas del Municipio incluirá una determinación de que los costos son razonables.[6]

"El objetivo fundamental de las subastas es precisamente proteger el erario público consiguiendo la construcción de obras públicas y la adquisición de servicios de calidad para el gobierno al mejor precio posible. Para ello, es necesario fomentar la competencia libre y transparente entre el mayor número de licitadores posible".[7] El Tribunal Supremo ha reiterado que, para poder "cumplir con su obligación constitucional y asegurar que el derecho a obtener la revisión judicial de una decisión de una agencia sea uno efectivo es imprescindible exigir que la misma esté fundamentada, aunque sea

---

[5] 21 LPRA § 7216 (Énfasis nuestro).
[6] (Traducción suplida) (Énfasis nuestro).
[7] *RBR Construction, SE* v. *Autoridad de Carreteras y Transportación,* 149 DPR 836, 848-849 (1999).

de forma sumaria".[8] Es decir, "[a]un cuando no se exige determinaciones de hechos y de derecho, en la adjudicación de procedimientos informales deben mediar razones suficientes que pongan en conocimiento a las partes y al tribunal de los fundamentos que propiciaron tal decisión".[9]

En *L.P.C. & D.* v. *Autoridad de Carreteras y Transportación*, 149 DPR 869 (1999), nuestro más alto foro expresó que, algunos de los objetivos que se logran al requerir que la decisión de una agencia administrativa sean fundamentadas son: "**(1) proporcionar a los tribunales la oportunidad de revisar adecuadamente la decisión administrativa y facilitar esa tarea**; (2) fomentar que la agencia adopte una decisión cuidadosa y razonada dentro de los parámetros de su autoridad y discreción; **(3) ayudar a la parte afectada a entender por qué el organismo administrativo decidió como lo hizo, y al estar mejor informada, poder decidir si acude al foro judicial o acata la determinación; (4) evitar que los tribunales se apropien de funciones que corresponden propiamente a las agencias administrativas bajo el concepto de especialización y destreza**".[10]

"Los tribunales tenemos el deber de asegurar que, al efectuar sus gestiones de compra y contratación, las instrumentalidades públicas cumplen con la ley, con sus propios procedimientos y que tratan de forma justa a los licitadores".[11] Esto, en virtud de que los dineros del pueblo se gasten en el beneficio del interés público.[12]

### B.

El Art. 3.19 a la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según

---

[8] *L.P.C. & D.* v. *Autoridad de Carreteras y Transportación*, 149 DPR 869, 877 (1999) (citando a *RBR Const., S.E.* v. *A.C.*, 149 DPR 836 (1999)).
[9] *Id.* pág. 878 (citando a *Godreau & Co.* v. *Com. Servicio Público*, 71 DPR 649, 655-657 (1950)).
[10] *Id.* págs. 878-879 (Énfasis nuestro).
[11] *RBR Const., S.E.* v. 149 DPR en la pág. 856.
[12] *Id.*

enmendada, (LPAU), dispone sobre los procesos de licitación pública, y el procedimiento y término para solicitar revisión administrativa en la adjudicación de estos.[13] Específicamente, establece que, los procesos de licitación pública se celebrarán de conformidad a la Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019, Ley Núm. 73-2019, según enmendada, **salvo** los procesos de licitación pública municipal que se realizarán de conformidad al Código Municipal de Puerto Rico.[14]

La Ley Núm. 73-2019 dispone que la presentación del recurso de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales será un requisito jurisdiccional antes de presentar un recurso de revisión judicial ante el Tribunal de Apelaciones.[15] Sobre el alcance de dicha ley, la misma dispone que "[l]a Rama Judicial, la Asamblea Legislativa, la Universidad de Puerto Rico y los **municipios podrán**, **de forma voluntaria**, adoptar los procesos de compras y subastas de bienes, obras y servicios aquí establecidos, a través de la Administración de Servicios Generales".[16]

Ahora bien, el Art. 1.50 del Código Municipal de Puerto Rico establece:

---

[13] 3 LPRA § 9659 (enmendado por la Ley Núm. 48-2024 y por la Ley Núm. 153-2024).

[14] "La parte adversamente afectada por una determinación en un proceso de licitación pública podrá presentar una solicitud de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales dentro del término de diez (10) días calendario, contados a partir del depósito en el correo federal o la notificación por correo electrónico, lo que ocurra primero, de la adjudicación del proceso de licitación pública. La Junta Revisora de Subastas de la Administración de Servicios Generales deberá determinar si acoge o no la solicitud de revisión administrativa, dentro del término de diez (10) días calendario de haberse presentado la solicitud de revisión administrativa. Si dentro de ese término, la Junta Revisora de la Administración de Servicios Generales determina acoger la misma, tendrá un término de treinta (30) días calendario adicionales para adjudicarla, contados a partir del vencimiento de los diez (10) días calendario que tenía para determinar si la acogía o no. La Junta Revisora de la Administración de Servicios Generales podrá extender el término de treinta (30) días calendario, una sola vez, por un término adicional de quince (15) días calendario". *Id.* (Énfasis nuestro).

[15] 3 LPRA § 9838a.

[16] 3 LPRA § 9831b (Énfasis nuestro).

**El Tribunal de Apelaciones revisará, el acuerdo final o adjudicación de la Junta de Subastas**, el cual se notificará por escrito y mediante copia por correo escrito regular y certificado a la(s) parte(s) afectada(s). La solicitud de revisión se instará dentro del término jurisdiccional de diez (10) días contados desde el depósito en el correo de la copia de la notificación del acuerdo final o adjudicación. La notificación deberá incluir el derecho de la(s) parte(s) afectada(s) de acudir ante el Tribunal de Circuito de Apelaciones para la revisión judicial; término para apelar la decisión; fecha de archivo en auto de la copia de la notificación y a partir de qué fecha comenzará a transcurrir el término. La competencia territorial será del circuito regional correspondiente a la región judicial a la que pertenece el municipio.[17]

En cuanto a la notificación, tendrá que ser clara, eficaz y cursada por escrito.[18] Además, se requiere que la notificación de una adjudicación sobre subastas incluya los fundamentos que justifiquen su determinación, aunque sea de forma breve, sucinta o sumaria. Así, los tribunales podrán revisar efectivamente los fundamentos para establecer si la determinación de la junta ha sido arbitraria, caprichosa o irrazonable.[19]

Como parte del debido proceso de ley, es indispensable que se notifique adecuadamente a todas las partes cobijadas por el derecho a cuestionar, mediante revisión judicial, la adjudicación de una subasta. Esto, debido a que una notificación defectuosa priva de jurisdicción al foro revisor para entender sobre el asunto impugnado, pues el recurso que se presente ante un tribunal de mayor jerarquía sería prematuro.[20] La falta de jurisdicción sobre la materia puede plantearse a petición de parte o por el tribunal *motu proprio* en cualquier etapa de los procedimientos y debe evaluarse rigurosamente.[21]

---

[17] 21 LPRA § 7081 (Énfasis nuestro).
[18] T*ransporte Rodríguez Asfalto, Inc.* v. *Junta de Subastas*, 194 DPR 711, 720 (2016); *Cordero Vélez* v. *Mun. de Guánica*, 170 DPR 237, 247 (2007); *Torres Prods.* v. *Junta Mun. Aguadilla*, 169 DPR 886, 895 (2007).
[19] T*ransporte Rodríguez Asfalto, Inc.* v. 194 DPR en la pág. 720; *Torres Prods.* v. 169 DPR en la pág. 895; *Pta. Arenas Concrete, Inc.* v. *J. Subastas,* 153 DPR 733, 742 (2001).
[20] *Puerto Rico Eco Park, Inc.* v. *Municipio de Yauco*, 202 DPR 525 (2019).
[21] *Id.*

La falta de jurisdicción no puede ser subsanada y está claramente establecido que los tribunales no pueden arrogarse la jurisdicción que no tienen ya que carecen de discreción para asumir jurisdicción cuando no la hay.[22] En el ámbito judicial la notificación es parte integral de la actuación judicial, por lo tanto, para que una resolución u orden surta efecto tiene que ser emitida por un tribunal con jurisdicción y notificada a las partes, ya que es a partir de la notificación que comienzan a decursar los términos establecidos en la misma y la determinación afectará el estado procesal del caso.[23]

Un recurso prematuro al igual que uno tardío, "sencillamente adolece del grave e insubsanable defecto de privar de jurisdicción al tribunal al cual se recurre".[24] Sin embargo, existe una importante diferencia en las consecuencias que acarrean. La desestimación por un recurso tardío priva fatalmente a la parte de poder presentar el recurso nuevamente, ante el mismo foro o cualquier otro. No obstante, la desestimación de un recurso por prematuro permite que la parte que recurre pueda presentarlo nuevamente, una vez el foro apelado resuelve lo que estaba ante su consideración.[25] Según nuestro Tribunal Supremo, prematuro es lo que ocurre antes de tiempo; en el ámbito procesal, una revisión o un recurso prematuro es aquel presentado en la secretaría de un tribunal apelativo antes de que éste tenga jurisdicción.[26]

### III.

En el presente caso, la queja de IFS se centra en la omisión de la Junta de Subastas de incluir algún documento que justificara el cálculo de las puntuaciones, y la razón específica para otorgar la *buena pro* al licitador agraciado -Design & Field, LLC -. Señala que,

---

[22] *Martínez* v. *Junta de Planificación*, 109 DPR 839, 842 (1980).
[23] *Caro* v. *Cardona*, 158 DPR 592 (2003).
[24] *Julia Padró, et al* v. *Vidal, S.E.*, 153 DPR 357, 366 (2001); *Rodríguez* v. *Zegarra*, 150 DPR 649, 654 (2000).
[25] Véase: *Yumac Home* v. *Empresas Masso,* 194 DPR 96, 107 (2015); *Torres Martínez* v. *Ghigliotty,* 175 DPR 83, 97-98 (2008).
[26] *Hernández* v. *Marxuach Const. Co.*, 142 DPR 492, 497 (1997).

por ello, desconoce si el Municipio tomó en consideración los parámetros establecidos por el Proceso de Subasta en su Sección 10.2,[27] referente a la Puntuación de la Propuesta o *Proposal Scoring*. Alega, además, que no fue incluida en las comunicaciones procesales referentes a la subasta en curso.

El Municipio, en defensa de la corrección de la adjudicación impugnada, nos indica que, la Junta de Subastas efectuó una adjudicación de la subasta en la que desglosó las propuestas y las puntuaciones que habían obtenido las compañías licitadoras.[28] Dicha Junta razonó que hubo compañías que obtuvieron las **mismas puntuaciones** en cuanto a los requerimientos técnicos y **de costos.** La Junta de Subasta entendió que, las compañías que sacaron la misma puntuación habían cumplido con todos los requisitos solicitados en el pliego, siendo una de ellas IFS. Finalmente, nos expresa que la Junta de Subasta adjudicó la *buena pro* al licitador que ofertó la cuantía más baja, conforme el mandato del Art. 2.040 inciso (a) del Código Municipal de Puerto Rico.[29]

En este caso al notificar la Adjudicación de la Subasta, la Junta de Subastas se limitó a indicar que: "[l]os criterios que se utilizaron para esta evaluación son los que se desglosan en las tablas que más adelante se muestran velando por los mejores intereses del Municipio de Lares y en aras de proteger los fondos municipales". También, plasmó una tabla que contenía la Propuesta Económica de cada compañía y la Puntuación de la Propuesta correspondiente. Finalmente adjudicó la subasta a Design & Field, LLC, "ya que cumplió con las condiciones y especificaciones y su oferta es razonable".

---

[27] Apéndice 2 de la parte recurrente, págs. 5-32 (Énfasis nuestro).
[28] Apéndice 1 de la parte recurrida, págs. 1-25.
[29] 21 LPRA § 7216.

Si bien nuestra jurisprudencia establece que, la Notificación de Adjudicación de una subasta debe estar fundamentada, al menos de forma sumaria y sucinta,[30] lo expresado por la Junta de Subastas en este caso no alcanza dicho criterio. Sus fundamentos amplios y generales colisionan con el objetivo de ayudar a la parte afectada a entender por qué el organismo administrativo decidió cómo lo hizo, y al estar mejor informada.[31]

Examinado el recurso, las argumentaciones de las partes, en específico la Notificación de Adjudicación de la subasta, a la luz de los requisitos establecidos por nuestro ordenamiento, es inescapable concluir que fue deficiente. No incluyó: 1) una síntesis de las propuestas sometidas; 2) las razones para no adjudicar a los licitadores perdidosos; y 3) los fundamentos de su decisión para adjudicar la buena pro. Así pues, la Junta de Subastas incumplió con una notificación adecuada de la adjudicación. En la medida en que la Junta de Subastas emitió una notificación defectuosa, no ha comenzado a transcurrir el término para solicitar la revisión de la adjudicación de la subasta.

Por tanto, concluimos que el presente recurso es prematuro. Es necesario que la Junta de Subastas notifique adecuadamente a todos los licitadores no favorecidos por su determinación para que de ahí en adelante comience a transcurrir el término para acudir en un recurso de revisión ante este Tribunal de Apelaciones.

IV.

Por los fundamentos expresados, se *desestima* el presente recurso por ser prematuro y privarnos de jurisdicción. Se ordena a la Junta de Subastas que notifique la adjudicación de la subasta conforme a derecho.

---

[30] *L.P.C. & D.* v. *Autoridad de Carreteras y Transportación*, 149 DPR 869, 879 (1999).
[31] *Id.*, págs. 878-879 (citando a *Rivera Santiago* v. *Srio. De Hacienda*, 119 DPR 265, 272 (1987)).

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones